J-A05001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| STEVEN BURDA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALLA KORENMAN A/K/A ALLA BURDA | : | No. 1609 EDA 2022 |

Appeal from the Order Entered June 1, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2010-26928

| STEVEN BURDA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALLA KORENMAN A/K/A ALLA BURDA | : | No. 1747 EDA 2022 |

Appeal from the Order Entered June 1, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2010-26928 - Seq. 1705

| STEVEN BURDA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALLA KORENMAN A/K/A ALLA BURDA | : | No. 1748 EDA 2022 |

Appeal from the Order Entered June 1, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2010-26928 - Seq. 1706

| STEVEN BURDA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

J-A05001-23

<table>
<tr><td align="center">Appellant</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td align="center">v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>ALLA KORENMAN A/K/A ALLA BURDA</td><td>:</td><td>No. 1749 EDA 2022</td></tr>
</table>

Appeal from the Order Entered June 1, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2010-26928 - Seq. 1707

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 2, 2023**

Steven Burda (Father) appeals, *pro se*, from the orders,[1] entered in the Court of Common Pleas of Montgomery County, in this child support matter. After our review, we reverse, in part, and remand with instructions.

Father and Alla Korenman a/k/a Alla Burda (Mother) were married in 2010. They are the parents of two minor children, E.B., born in December 2008, and A.B., born in July, 2010. The parties were divorced by decree, dated September 14, 2012, which incorporated an arbitration award for child support and alimony, payable by Father to Mother.[2] **See** Arbitration Award, 9/4/12. The arbitration award provided that Father's child support obligation

_____

[1] Father filed separate notices of appeal for each docket (Docket Entries 1708, 1712, 1713 and 1714). The appeal at 1609 EDA 2022 is taken from a June 1, 2022 order denying Father's exceptions to the hearing officer's recommendation in child support. The appeals at 1747, 1748 and 1749 EDA 2022 are also taken from orders entered June 1, 2022 in the parties' child support matter. **See infra** at 7. This Court *sua sponte* consolidated these appeals. **See** Order, 8/3/22; Pa.R.A.P. 513.

[2] The arbitration award was entered after three days of hearings, which were held on February 22 and 23, 2012, and March 5, 2012.

could be modified if either party acquired greater earning capacity than that determined by the arbitrator. ***See id.*** at 15. On October 5, 2012, Father filed a "Petition to Vacate Child Support, Alimony and to Address Credits" with the Domestic Relations Section of the Court of Common Pleas of Montgomery County. The Honorable Wendy Demchick-Alloy summarized the subsequent procedural history as follows:

> The hearing officer who reviewed the petition found that conditions had changed, but rather than vacating [Father's] support obligation, she increased it to $2,002.39 [from $1,371.00] per month for the period beginning January 1, 2013 and continuing indefinitely. [Father] filed exceptions to the hearing officer's report and recommended order and demanded a hearing *de novo*. At that time, the Montgomery County Court of Common Pleas had adopted a procedure that gave litigants non-record hearings before the support hearing officer **and a *de novo* [hearing] on exceptions. For reasons that do not expressly appear on the record, the court did not hold a hearing or adjudicate [Father's] exceptions. The list of docket entries leads the undersigned to infer that one of the reasons is the volume of applications filed by [Father],**[3] **but none of the judges to whom this action was previously assigned stated on the record why the court did not hold the *de novo* hearing.**

Opinion by Judge Demchick-Alloy, 6/16/22, at 2-3 (emphasis added) (footnote omitted).

Thereafter, Father filed a complaint in support and, on November 13, 2014, the support hearing officer held a hearing. The hearing officer

---

[3] This pattern has continued since 2012, with over 1,700 entries on this docket. We caution Father that, in this context, more is not necessarily better. Bombarding the lower court and this Court with applications, some spurious, many repetitive, has exacerbated delay and confusion in this matter.

calculated Father's child support obligation as $1,275.77, approximately $100 less than the original obligation. Father again filed exceptions, and he demanded a *de novo* hearing with respect to both the 2014 recommended order ($1,275.77) and 2013 recommended order ($2,002.39). Again, **"[f]or reasons that do not appear of record, the court did not hold a *de novo* hearing**." ***See id.*** at 3 (emphasis added).

On November 28, 2014, Father filed a petition for reimbursement pursuant to Pa.R.C.P. 1910.26(b) (Support Order. Enforcement. Stay of Proceedings. Special Relief) and 23 Pa.C.S.A. § 3323(f) (Equity power and jurisdiction of the court), referring to his 2014 exceptions. Once again, **"[f]or reasons that do not expressly appear on the record, the court did not hold the hearing.**" Opinion by Judge Demchick-Alloy, 6/16/22, at 4 (emphasis added).

On August 26, 2020, the Honorable Carolyn Carluccio entered an order directing a hearing officer to hear evidence with respect to the parties' support obligations from 2013 through 2019 and to file a report and recommended order with respect to each of those years. ***See*** Order, 8/26/20.[4]

_____

[4] That order (docket entry 1604) provides, in relevant part:

> Effective July 18, 2016, Montgomery County adopted Pennsylvania Rule of Civil Procedure 1910.12. *Office Conference. Hearing. Record. Exceptions Order.* Rule 1910.12 sets forth the procedure for a child support order and provides for a record proceeding before a support hearing officer to receive evidence,

*(Footnote Continued Next Page)*

The hearing officer held hearings on March 15, 2021 and June 24, 2021. On July 28, 2021, the hearing officer filed a report, which provided calculations of the parties' earning capacities, adjustments to the basic child support obligation, and deviations for each of the relevant time periods, as well as recommended orders, as follows:

Jan. 1, 2013 – Aug. 8, 2013:      $1,733.98 /month

Aug. 9, 2013 – Dec. 31, 2013:      $1,751.09/month

Jan. 1, 2014 – Dec. 31, 2014:      $2,097.56/month

Jan. 1, 2015 – Dec. 31, 2015      $1,684.18/month

Jan. 1, 2016 – Dec. 31, 2016      $1,171.00/month

_____

> hear argument and issue a report containing a recommendation. Thereafter, within 20 days after the report is issued, either party may filed exceptions to the report or any part thereof.

> * * *

> Within 10 days of this Order, the parties shall submit copies of their tax returns from 2013 through and including 2019 [] to the Domestic Relations Office.  Thereafter, within 30 days, the Support Hearing Officer shall conduct a telephone conference [due to Covid-19 restrictions] with [c]ounsel/parties to assess the status, any discovery requests[,] and the necessity for testimony at record proceedings. On the conference call, the Support Hearing Officer shall address if an Order can be entered "administratively" for some, or all, of the years in dispute without the necessity of testimony.  It is anticipated that a Report and Order will be entered by the Support Hearing Officer within 90 days of this Order.  **Following the issuance of the Officer's Report, either party may file exceptions in accordance with the Rule.**

Order, 8/26/20 (emphasis added).

Jan. 1, 2017 – Dec. 31, 2017          $1,076.74/month

Jan. 1, 2018 –  Dec. 31, 2018         $1,411.98/month

Jan. 1, 2019 – May 28, 2019          $1,489.61/month

May 29, 2019 – Dec. 31, 2019        $1,225.63/month

Jan.1, 2020 – Dec. 31, 2020          $ 771.28/month

Jan. 1, 2021– Mar. 5, 2021           $ 903.64/month

Mar. 6, 2021 – Forward [5]            $ 969.34/month

_____

[5] The original order read "Effective March 6, 2021 to, and including, December 31, 2021." Order, 6/1/22. After Father appealed that order, Judge Demchick-Alloy noted a clerical error apparent from the record, specifically, the implication that Father's support obligation would **end** on December 31, 2021. It is well-established that a court may modify or rescind any order within 30 days after its entry if no appeal has been taken. **See** Pa.R.A.P. 1701; 42 Pa.C.S.A. § 5505. However, a trial court may not ordinarily modify an order beyond the thirtieth day after its entry, except as otherwise provided by law. Although here the amendment was made beyond 30 days and after the filing of a notice of appeal, contrary to the general prohibitions of section 5505 and Rule 1701(a)(1), the court could properly "correct formal errors in papers relating to the matter[.]" Pa.R.A.P. 1701(b)(1). Courts have inherent power to correct their own judgments, even after expiration of the appeal period, and this power extends to the correction of obvious or patent mistakes and to the amendment of court records. **See Fish v. Gosnell**, 463 A.2d 1042, 1052 (Pa. Super. 1983) (where amendment is clerical matter based on face of record and no fact finding is required, amendment to order under appeal is allowed). Further, despite the general prohibition on modifying orders after the appeal period has expired, courts have permitted modification under section 5505 in the following circumstances: extrinsic fraud; lack of jurisdiction over subject matter; **fatal defect apparent on face of record**; or some other evidence of "extraordinary cause justifying intervention by the court." **ISN Bank v. Rajaratnam**, 83 A.3d 170, 172 (Pa. Super. 2013) (emphasis added).

- 6 -

Report and Recommended Orders, 7/28/21.[6]

Father filed exceptions on August 11, 2021. On May 2, 2022, Judge Demchick-Alloy heard argument on Father's exceptions and, on June 1, 2022, entered an order denying those exceptions.[7] On that same date, the court entered an order denying Father's "Preliminary Objections,"[8] denying Father's

_____

[6] On December 4, 2018, the parties entered into an "Agreed Custody Order." The order provided, in part: "The parties shall have shared legal custody[;] Mother shall have primary custody[; and] Father shall have partial physical custody [every other weekend and one overnight each week]. Agreed Custody Order, 12/4/18. Inexplicably, Father maintains no final custody order has ever been entered. **See** Plaintiff's Praecipe to Attach to Support Exceptions Filed on 8/11/2021, at 2 (Supplemental and Complimentary Issues to be Raise[d] on Exceptions, 8/17/21).

[7] That order reads:

> AND NOW, this 1st day of June, 2022, upon consideration of the exceptions to the recommendation of the hearing officer in support filed by payor, [Father] (docket seq. no. 1617), and after oral argument thereon, all of the exceptions are overruled.

Order, 6/1/22. That order, effective January 1, 2013, also listed, for the years 2013 through 2021, the parties' monthly net income, the payor's monthly obligation, and the percentage of unreimbursed medical expenses for which each party was responsible. **Id.** at 1-7. The order also required Mother to provide medical insurance coverage. **Id.** at 8.

[8] The order reads:

> AND NOW, this 1st day of June, 2022, upon consideration of the application styled as "Plaintiff's Preliminary Objections to Defendant's Deficient, Defective & Untimely Answer and Counterclaim" (docket seq. no. 1665), in the nature of a sur-reply to "Mother's Reply to Father's Motion for Sanctions Pursuant to 231 Pa.R.Civ.P. 1915.14," (docket seq. no. 1663), the section entitled "Mother's Counterclaim to Father's Motion for Sanctions" (*id.* at pp.5-6) is stricken without prejudice to [Mother's]

*(Footnote Continued Next Page)*

"Motion for Sanctions" and "Motion for Summary Judgment,"[9] and denying

Father's "Motion for Sanctions for "Mother's Willful Disobedience."[10]   Father

filed timely appeals from those orders.  The court also ordered the Domestic

Relations Section to audit Father's account in response to Father's petition for

recovery of support overpayment and to reduce his support obligation in

accordance with Pa.R.C.P. 1910.19(f)(1) if the audit uncovered an

overpayment.  That order was not appealed.[11]

_____

procedural right to file a motion for sanctions as a separate docket
entry and in conformity with the state and local rules of civil
procedure governing motion practice.  The remaining requests in
[Father's] application are denied.

Order, 6/1/22.

[9] That order provides: "AND NOW, this 1st day of June, 2022, upon
consideration of the application styled as a "Motion for Sanctions Pursuant to
231 Pa.R.C.P. 1915.14" (docket seq. no. 1654) and "Plaintiff's Motion for
Summary Judgment" (docket seq. no. 1681), the applications are denied."
Order, 61/22.

[10] That order provides: "AND NOW, this 1st day of June, 2022, upon
consideration of the applicable styled as "Father's Motion for Sanctions
Pursuant to [] Pa.R.C.P. 1915.4-4(c) and 1915.14 for Mother's Willful
Disobedience to Pa.R.C.P. 1915.4-4(b)(2) [and] Pa.R.C.P. 1915.4-4(b)(3)"
(docket seq. no. 1691), the application is denied."  Order, 6/1/22.

[11]  By letter dated August 17, 2021, the Domestic Relations Section informed
Father that as of that date, there was an overpayment of $3,867.84.  **See**
Pa.R.C.P. 1910.19(g)(1) ("Order in Effect.  If there is an overpayment in an
amount in excess of two months of the monthly support obligation and a
charging order remains in effect, after notice to the parties as set forth below,
the domestic relations section shall reduce the charging order by 20% or an
amount sufficient to retire the overpayment by the time the charging order is
terminated. The notice shall advise the parties to contact the domestic
*(Footnote Continued Next Page)*

Father raises eleven issues for our review, which we have summarized as follows:

Did the trial court err or abuse its discretion in:

1. Denying Father's motion for default judgment;

2. Denying Father's preliminary objections to Mother's answer and counterclaim;

3. Failing to schedule a hearing on Father's motion for sanctions for Mother's defective pretrial statement;

4. Failing to rule on Father's motion for sanctions where evidence showed Mother violated provision 5 of 2/24/15 order;

5. Overruling Father's objections during the May 2, 2022 hearing;

6. Ignoring law and legal process (contempt/sanctions) where evidence showed Mother violated provision 5 of 2/24/15 order;

7. Ignoring law and legal process by "making up numbers for support calculation purposes—or pulling numbers from thin air—for support exceptions hearing" where there was no support for such and allowing Mother reimbursement for activities/memberships going back to 2013;

8. Adopting master's recommendation;

9. Making Father pay for "wild and unnecessary activities or cost of memberships to synagogue or community center" going back to 2013;

10. Refusing to listen to Father's argument and "simply siding everything with the Mother" without any finding of facts;

_____

relations section within 30 days of the date of the mailing of the notice if either or both of them wishes to contest the proposed reduction of the charging order. If either party objects, the domestic relations section shall schedule a conference to provide the objecting party the opportunity to contest the proposed action. If neither party responds to the notice or objects to the proposed action, the domestic relations section shall have the authority to reduce the charging order.").

11. Allowing Mother not to file pretrial statement and permit Mother's exhibits despite Father's objections.

Appellant's Brief, at 8-11 (reworded for clarity).

The standard governing our review of a child support order is follows:

[T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias[,] or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*M.E.W. v. W.L.W.*, 240 A.3d 626, 634 (Pa. Super. 2020) (citation omitted).

Furthermore, this Court

must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses firsthand.

When the trial court sits as fact[-]finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented. [T]his Court is not free to usurp the trial court's duty as the finder of fact.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (citations and quotation marks omitted). *See also Brotzman–Smith v. Smith*, 650 A.2d

471, 474 (Pa. Super. 1994) (assessment of credibility of witnesses is within province of trial court and court is free to weigh evidence presented).

"The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." *E.R.L. v. C.K.L.*, 126 A.3d 1004, 1006 (Pa. Super. 2015) (citation and quotation marks omitted). Generally, a court determines child support using the support guidelines. *See* Pa.R.C.P. 1910.16-1 to 1910.16-7 (subsequently amended eff. Jan. 1, 2022). "[T]here is a rebuttable presumption that the guideline calculated support obligation is the correct support obligation." Pa.R.C.P. 1910.16-1(d); *see also Ileiwat v. Labadi*, 233 A.3d 853, 861 (Pa. Super. 2020). *Cf.* Pa.R.C.P. 1910.16-1(d)(1) ("The presumption is rebutted if the trier-of-fact concludes in a written finding or states on the record that the guidelines support amount is unjust or inappropriate.").

Preliminarily, we emphasize that appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2101. This Court may quash or dismiss an appeal if the appellant fails to comply with the Rules. *Id.* "When issues are not properly raised and developed in briefs, [or] when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof." *Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted).

Although this Court may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. *Id.*

"[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***Umbelina v. Adams***, 34 A.3d 151, 161 (Pa. Super. 2011), ***quoting In re W.H.***, 25 A.3d 330, 339 (Pa. Super. 2011); ***see also*** Pa.R.A.P. 2119(a). Further, if the defects in the brief of the appellant and are substantial, the appeal may be dismissed. ***See*** Pa.R.A.P. 2101.

Although Father raises eleven issues, he devotes one paragraph for each issue, a total of three and one-half pages,[12] to support these claims in the Argument section of his brief. ***See*** Appellant's Brief, at 18-21. After our review, we find Father's first three claims waived. The extent of each of the arguments on those issues consists of Father's restatement of the issue, a claim that "It's a no brainer[,]" and a reference for this Court to "N/T[.]"[13] ***See*** Appellant's Brief, at 18-19.[14]

---

[12] Father's tenth and eleventh issues are addressed in one paragraph. ***See*** Appellant's Brief, at 21.

[13] The record before us includes approximately 1,800 pages of transcripts from 2011 to 2018.

[14] This Court has noted that, while willing to liberally construe materials filed by a *pro se* litigant, an appellant is not entitled to any particular advantage because he lacks legal training. ***O'Neill v. Checker Motors Corp.***, 567 A.2d 680, 682 (Pa. Super. 1989). And, as our Supreme Court has explained: "[A]ny layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assumes the risk that [his] lack of expertise and legal training will prove [his] undoing." ***Id.*** (citations omitted).

An appellate brief must support the claims presented with citation to and discussion of pertinent legal authorities. ***See*** Pa.R.A.P. 2119(a)-(c). Instantly, Father does not refer to the place in the record that would support his claims. Pennsylvania Rule of Appellate Procedure 2119(c) provides:

> Reference to record. If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (see Rule 2132) (references in briefs to the record).

Pa.R.A.P. 2119(c). Moreover, Father does not develop an argument or offer any authority in support of his claims. ***See*** Pa.R.A.P. 2119(a). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Krauss v. Trane U.S. Inc.***, 104 A.3d 556, 584 (Pa. Super. 2014) (citation omitted); ***J.J. DeLuca Co., Inc. v. Toll Naval Assoc.***, 56 A.3d 402, 411 (Pa. Super. 2012). Father's failure to develop these issues on appeal with citation to relevant authorities constitutes waiver of these claims. ***See Irwin Union National Bank and Trust Company v. Famous***, 4 A.3d 1099, 1103 (Pa. Super. 2010) (explaining Superior Court will not act as counsel and will not develop arguments on behalf of appellant; when deficiencies in brief hinder our ability to conduct meaningful appellate review, we may deem certain issues waived); ***Lackner v. Glosser***, 892 A.2d 21 (Pa. Super 2006) (explaining arguments not appropriately developed with citation to relevant authority are waived on appeal). Father's first three claims, therefore, are waived.

In his fourth issue, Father contends the trial court abused its discretion in denying him a procedural right to "be heard" on his motion for sanctions. Specifically, Father claims that he was entitled to oral argument on his motion. This claim is meritless.

Father's claim stems from his literal reading of 42 Pa.C.S.A. § 2501(a), which states that in all civil matters before any tribunal, every litigant "shall have the right to be heard, by himself and his counsel, or by either of them." *Id.* However, this Court has interpreted section 2501 of the Judicial Code as a guarantee of "an individual's right to self-representation in civil matters." *See Delaware Valley Landscape Stone, Inc. v. RRQ, LLC*, 284 A.3d 459 (Pa. Super. 2022); *see also Barrett v. M&B Medical Billing, Inc.*, 291 A.3d 371 (Pa. Super. 2022). The language in section 2501(a) does not require oral argument before the court for every motion filed.

Further, Pennsylvania Rules of Civil Procedure 211 states: "Any interested party may request oral argument on a motion. The court may require oral argument, whether or not requested by a party. **The court may dispose of any motion without oral argument.**" Pa.R.C.P. 211 (emphasis added). The Explanatory Comment to Rule 211 provides:

> Current Rule 211, if read literally, confers on a party the right to argue any motion before the trial court. However, the Superior Court and the Commonwealth Court have both held that **any right to oral argument conferred by Rule 211 is only a qualified right subject to judicial discretion**. *See Gerace v. Holmes Protection of Philadelphia*, 516 A.2d 354 (Pa. Super. 1986); *City of Philadelphia v. Kenny*, 369 A.2d 1343 (Pa. Cmwlth. 1977). To remedy any confusion between the text of the rule and actual practice supported by appellate precedent, Rule 211 has

- 14 -

been amended to provide that a party has the right to request oral argument [] and gives discretion to the trial court to require oral argument, whether requested or not, or to dispose of any motion without oral argument.

Pa.R.C.P. 211, Explanatory Comment (emphasis added). We find no abuse of discretion in the court's disposition of the motion without argument.

Father also claims the court erred in denying the motion on its merits. Father filed his motion for sanctions on January 27, 2022, claiming Mother willfully failed to comply with the trial court's February 24, 2015 order. That order, an interim custody order, provided, in relevant part: "Pending a final custody order, Defendant-Mother shall not make any decisions regarding the [C]hildren that would affect Plaintiff-Father financially." Order, 2/24/15. Father sought sanctions for Mother's non-compliance from the date of the 2015 order, to the date of his 2022 motion, averring that "as of the date of this filing, there is no final custody order"—despite the fact that a final "Agreed Custody Order" was entered on December 4, 2018. **See supra** n. 5.[15] Mother filed a detailed and "reasoned opposition" to Father's motion for sanctions. **See** Opinion by Judge Demchick-Alloy, 8/3/22 (1749 EDA 2022), at 3.

On March 4, 2022, the court scheduled a hearing on Father's motion for May 2, 2022. On March 29, 2022, the court entered a second scheduling order, restating the May 2, 2022 date for a one-day hearing on Father's motion

_____

[15] On April 15, 2022, before a decision was rendered on his motion for sanctions, Father filed a "Motion for Summary Judgment" seeking judgment in his favor and against Mother in the amount of $174,000, which represented the sum of $2,000 per month from February of 2015 through April of 2022. Father requested oral argument on this motion as well.

for sanctions and scheduling argument on Father's "Petition for Recovery of Support Overpayment" and his "Exceptions to the Recommendation of the Hearing Officer in Support Retroactive to 1/1/2013." *See* Order, 3/29/22.

From our review of the record and the trial court's opinions, we piece together the following: On May 2, 2022, Judge Demchick-Alloy heard argument on several motions. Despite the fact that the two scheduling orders listed a hearing on Father's motion for sanctions, and argument on Father's other two motions, it appears the court declined to hear argument on Father's motion for sanctions. The court noted that all of the evidence required to be presented had been presented before the support hearing officer and, thus, was already filed of record. Additionally, the court also specified in its opinion that the evidence presented to the hearing officer was sufficient for disposition, on the merits, of Father's motion for sanctions. *See* Opinion by Judge Demchick-Alloy, 8/3/22 (1749 EDA 2022), at 3. *See also* Opinion by Judge Demchick-Alloy, 8/3/22 (1748 EDA 2022), at 6-9. The February 2, 2015 order ceased to have effect on December 5, 2018, when the court entered a final agreed custody order. Thus, the February 24, 2015 order provided that for the years 2015-2018, Mother could not claim expenses that would increase Father's support obligation. Substantively, the court found Mother did not violate that order. Judge Demchick-Alloy states that in response to Judge Carluccio's order for a hearing on the parties' support obligations for those years, evidence produced has been made part of the record and "facts of record led to the conclusion that the hearing officer did

- 16 -

not allow [Mother] to use activity expenses to increase [Father's] child support payments for the year 2015 through 2018." *Id.* at 15. Upon our review, we agree with the trial court's reasoning, and we discern no error or abuse of discretion. *M.E.W.*, *supra*; *Mackay*, *supra*.

Additionally, with respect to this issue, Father baldly asserts in his argument that "Mother clearly admitted that she violated the order," and that he "clearly showed that Mother violated [] provision 5 of the Order[.]" Appellant's Brief, at 19. Father's assertion is not at all clear to this Court.

In her reply to Father's motion for sanctions, Mother stated:

It was never the intent of this single line within the Interim Custody Order to require that Mother permanently keep the children in day care, a summer camp for preschool children, and the same activities long-term. . . . It is unreasonable that Father demands that the children's activities do not change as they age from 5 and 7 years old (in 2015)[]. Mother's adjustments on activities as required based on age-appropriate activities should not be a cause for sanction.

Mother's Reply to Father's Motion for Sanctions, 2/25/21, at 1-2. This is certainly reasonable and, notably, Mother listed the expenses for the Children's activities, which, based on her modifications, reduced the amounts requested for child support for "for all years other than 2015 (which was the first year when both children had childcare)." *Id.* at 3. Mother also noted that this has been FURTHER reduced by [the support hearing officer's] determination[.] In effect, Mother's decision and updates to the Children's activities ha[ve] REDUCED Father's financial obligation." *Id.* We are unable to discern how Father interprets this as an admission.

Father's fifth issue, that the court "acted in [a] bias[ed] and prejudicial manner, overruling all objection of the Father during the May 2, 2002 hearing," is also waived. Once again, Father's argument on that issue consists of a verbatim restatement of the issue, followed by two bald assertions:

> There are more than dozens of instances, as pointed out in transcripts. Appella[te] court, after reading the transcripts, will see how the legal abuse took place against the Father for the purpose of rewarding the Mother. This is unfortunate.

Appellant's Brief, at 19-20. That is the extent of Father's argument. Father provides no legal analysis or citation to authority, makes only a general reference to the "transcripts" without specific citation to the record, and offers no discussion as to how the court abused its discretion in overruling his objections. Essentially, Father presents a blanket claim that the trial court chose to "reward" Mother.

We repeat that we will not act as counsel and develop arguments on Father's behalf, "nor shall we scour the record to find evidence to support an argument[.]" *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citation omitted). Since Father has failed to cite record support for his argument, he cannot obtain relief. Pa.R.A.P. 2119(c); *J.J. DeLuca Co., Inc.*, *supra*. Father's mere assertions fail to provide this Court with any meaningful argument and, thus, precludes this Court's meaningful review. *See* Pa.R.A.P. 2101, 2119(a)-(c); *see also Krauss*, *supra*. Therefore, this issue is waived. *Milby*, *supra*.

- 18 -

For these same reasons, we find Father's claims in issues ten and eleven waived. *See* Appellant's Brief at 11, 21.

In his sixth issue, Father reargues issue four. We have considered and disposed of that issue above. *See supra* at 14-18.

Next, we examine, together, Father's seventh, eighth, and ninth issues. In each, Father challenges the trial court's support calculations and asserts the court erred or abused its discretion by "pulling numbers from thin air" where "nothing was supported by the income, expenses, or documents presented by Father and/or Mother," and "allowing Mother to collect reimbursement of all of her activities or memberships she has done going back 9 years, to [the] beginning of 2103 . . . **without any de novo review**[.]" Appellant's Brief, at 10, 20-21 (emphasis added).

Pennsylvania Rule of Civil Procedure 1910.11 governs the relevant support proceedings in this case:

**Rule 1910.11  Office Conference. Subsequent Proceedings. Order**

(a)(1) The office conference shall be conducted by a conference officer.

* * *

(c) At the conference, the parties shall furnish to the officer true copies of their most recent federal income tax returns, their pay stubs for the preceding six months, verification of childcare expenses and proof of medical coverage which they may have or have available to them. In addition, they shall provide copies of their income and Expense Statements in the forms required by Rule 1910.27(c), completed as set forth below.

* * *

(d)(1) The conference officer shall make a recommendation to the parties of an amount of support calculated in accordance with the guidelines.

* * *

(f) If an agreement for support is not reached at the conference, the court, without hearing the parties, shall enter an interim order calculated in accordance with the guidelines and substantially in the form set forth in Rule 1910.27(e). Each party shall be provided, either in person at the time of the conference or by mail, with a copy of the interim order and written notice that any party may, within twenty days after the date of receipt or the date of the mailing of the interim order, whichever occurs first, file a written demand with the domestic relations section for a hearing before the court.

* * *

(i) **If a demand is filed, there shall be a hearing *de novo* before the court. The domestic relations section shall schedule the hearing and give notice to the parties. The court shall hear the case and enter a final order substantially in the form set forth in Rule 1910.27(e) within sixty days from the date of the written demand for hearing.**

(j)(1) Promptly after receipt of the notice of the scheduled hearing, a party may move the court for a separate listing where:

(i) there are complex questions of law, fact or both; or

(ii) the hearing will be protracted; or

(iii) the orderly administration of justice requires that the hearing be listed separately.

(2) If the motion for separate listing is granted, discovery shall be available in accordance with Rule 4001 *et seq*.

Note: The rule relating to discovery in domestic relations matters generally is Rule 1930.5.

(k) No motion for post-trial relief may be filed to the final order of support.

Pa.R.C.P. 1910.11(a)(1), (c), (d)(1)-(2), (f), (i), (j), (k) (emphasis added).

"[U]nder Pa.R.C.P. 1910.11[,] a litigant has an absolute right to his/her day in court should it be desired." ***Warner v. Pollock***, 644 A.2d 747, 751 (Pa. Super. 1994). "A *de novo* hearing is full consideration of the case anew. The reviewing body is in effect substituted for the prior decision maker and redecides the case." ***Id.*** at 750 (internal citations and quotation marks omitted). "Once one of the parties demand[s] a [*de novo*] hearing each would be entitled to litigate as if it were the first proceeding." ***Id.*** ***See also Capuano v. Capuano***, 823 A.2d 995, 1000-03 (Pa. Super. 2003) (explaining under Rule 1910.11, any party to support action may file written demand for hearing *de novo* before trial court after court has entered support order based upon domestic relation officer's recommendation; Rule 1910.11 grants parties absolute right to *de novo* hearing on issues surrounding support order and parties must be permitted to present evidence in support of respective positions); ***Asin v. Asin***, 690 A.2d 1229, 1232 (Pa. Super. 1997) (Rule 1910.11 grants parties absolute right to *de novo* hearing on issues surrounding support order).

Here, the lack of *de novo* review of Father's 2013 and 2014 exceptions, upon demand and without explanation, is a recurring theme in Father's arguments and in the trial court's recitation of the procedural history in this case. **See** Judge Demichick-Alloy's Opinion, 6/16/22, ***supra*** at 2-4.

At the hearing before the master in support on December 12, 2012, the master acknowledged that the "next level is a *de novo* hearing." N.T.

12/10/12, at 4.[16]  At the conclusion of the hearing, the master stated:  "if you don't agree with my decision, you have 20 days to file [e]xceptions."  *Id.* at 91.  Father timely filed exceptions on February 6, 2013.

At a status conference on October 31, 2014, the Honorable Rhonda Lee Daniele acknowledged support exceptions were never decided, stating:  "So it's clear to me that, generally, support exceptions are still on the table."  N.T. Status Conference, 10/31/14, at 39.  *See also id.* at 48 (Judge Daniele stating:  "We have support exceptions that have been filed.").  Noting that she anticipated Father would file additional exceptions, Judge Daniele stated:  "If exceptions are filed to the master's order that's entered in two weeks, then I will schedule one hearing, and hear everything from the original exceptions petition, up to an including the date of our hearing."  *Id.* at 52.  The court also noted that there were "pending" support exceptions, and, rather than address those, the court deferred those, anticipating additional exceptions. *Id.* at 58 (Judge Daniele stating: "[I]t doesn't make any sense to hear one set of exceptions, when we know we're going to be faced with another one shortly thereafter.").

At a subsequent status conference on January 13, 2017, Judge Daniele again acknowledged Father's 2013 and 2014 exceptions remained outstanding, and explained:

---

[16] Generally, a hearing before the master is not a record hearing and a court reporter is not provided.  Father, however, filed a request to have a court reporter and paid the fee himself.

I determined that we were going to proceed with the hearing on support exceptions **until I got some type of pleading, it may have been a petition, it may have been another appeal from Mr. Burda, indicating that I shouldn't be hearing the support exceptions, because there were other matters on appeal**. . . . **[I]n an abundance of caution, I entered an order, canceling the support hearing and also indicating that I would hear no other issues in this case until there was absolutely nothing pending in the appellate courts.** [] I determined that nothing would proceed in the meantime until all appeals were out of the appellate courts, and between appeals, reconsideration of denials of appeals, either by the Superior Court quashing them or denying them or whatever, and thereafter, petitions to the Supreme Court, to take appeals to the Supreme Court, and petitions to reconsider filed with the Supreme Court, **it's taken two years to have all matters concluded, finally, in the appellate courts of Pennsylvania**. . . . These support exceptions go back to a recommendation of a support master that were confirmed as a court order on January 18, 2013.

Status Conference, 1/13/17, at 4-9. Judge Daniele then stated on the record that she would schedule a hearing at some future date, and she entered an order on the record pertaining to discovery. *Id.* at 10-12; *see also id.* at 12 ("So, if I schedule a hearing in June, all income received up until June, ten days before the hearing, is to be produced to each other ten days in advance of the hearing and bring it to court with you."); *id.* at 13-14 ("Docket Entry No. 402 is the actual support exceptions that [Father] filed, and that's the discovery order that I just entered pertaining to those support exceptions."); *id.* at 15 ("Docket Entry No. 827, Father filed support exceptions to the November 18, 2014, support exceptions. Obviously, that is also going to be included in the ultimate exceptions hearing."); *id.* at 17 ("So, it all boils down to support exceptions that will be heard by me and a discovery order that you

now both have, directing each of you how to go about conducting discovery and directing each of you to comply with the discovery requests of each other pertaining to support issues."); *id.* at 19 ("Okay. Enough. Produce the 2012 [tax returns]. I'll hear all of this as argument as part of the support exceptions."); *id.* at 32-33 ("By filing the [custody] appeal, you're [(Father)] the one that delayed the entry of a final custody order and the hearing of your support exceptions[.]").

Although Judge Demchick-Alloy correctly indicates in her June 16, 2022 opinion that reasons do not expressly appear on the record as to why no hearings were held on the 2013 and 2014 exceptions, after careful review of the transcripts, we conclude that the breakdown resulted from a combination of factors, namely Father's pending appeals, Judge Daniele's attempt at maintaining some type of order to the morass of filings and petitions before her, as indicated above, and the subsequent change, in 2016, of local procedure on support exceptions.

That change in local procedure, wherein the Montgomery County Court of Common Pleas adopted "the alternative hearing procedure of Pa.R.C.P.No. 1910.12," was noted at the outset of Judge Carluccio's 2020 order. Pursuant to Rule 1910.12, the court directed the hearing officer to review the record for the years 2013 through 2019 and issue a report and noted that, thereafter, either party "may file exceptions in accordance with the Rule." Order, 8/26/20. Accordingly, the hearing officer issued a report, Father filed exceptions, and Judge Demchick-Alloy, pursuant to Rule 1910.12, "**heard**

**argument on those exceptions** on May 2, 2022," *see* Opinion, 6/16/22, at 3 (emphasis added), and entered an order denying those exceptions. *See* Order 6/1/22.

In her June 16, 2022 opinion, Judge Demchick-Alloy explained that Judge Carluccio's 2020 order directing a hearing before the support hearing officer was a result of a change in local procedure: "[T]he Montgomery County Court of Common Pleas had adopted a procedure in which litigants receive a hearing of record before the support hearing officer, **but not a hearing *de novo* for exceptions**." *See* Opinion, 6/16/22, at 4 (emphasis added). This change was made pursuant to Pennsylvania Rule of Civil Procedure 1910.10, which provides, in relevant part:

> **Rule 1910.10. Alternative Hearing Procedures**
>
> (a) The action shall proceed as prescribed by Pa.R.C.P. No. 1910.11 **unless the court by local rule adopts the alternative hearing procedure of Pa.R.C.P. No. 1910.12**.
>
> (b) The president judge or the administrative judge of the Family Division of each county shall certify that all support proceedings in that county are conducted in accordance **with either Pa.R.C.P. No. 1910.11 or Pa.R.C.P. No. 1910.12.**

Pa.R.C.P. 1910.10(a), (b) (emphasis added). The Explanatory Comment summarizes the differences in the two alternative procedures:

> The procedure set forth in Pa.R.C.P. No. 1910.11 provides for a conference before a conference officer, a conference summary and entry of an interim order for support calculated in accordance with the guidelines, **and a right to demand a hearing de novo before a judge.** The hearing must be heard and the final order entered within 60 days of the written demand for hearing.

> The alternate procedure, as set forth in Pa.R.C.P. No. 1910.12, provides for a conference before a conference officer, a record hearing before a hearing officer, and issuance of a report and recommendation in which exceptions may be filed within ten days. **The court must hear argument and enter final order within 60 days of the filing of exceptions**.

Pa.R.C.P. 1910, Explanatory Comment (emphasis added).

Montgomery County Local Rule of Civil Procedure 1910.10 states: "The Montgomery County Court of Common Pleas adopts the alternative hearing procedure of Pa.R.C.P.No. 1910.12." Rule 1910.12 provides:

> If exceptions are filed, the interim order shall continue in effect. **The court shall hear argument on the exceptions** and enter an appropriate final order substantially in the form set forth in Rule 1910.27(e) within sixty days from the date of the filing of exceptions to the interim order. No motion for post-trial relief may be filed to the final order.

Pa.R.C.P. 1910.12(h) (emphasis added). The 2020 order specifically stated that "[f]ollowing the issuance of the Officer's Report, either party may file exceptions **in accordance with the Rule**." Order, 8/26/20 (emphasis added).[17] That reference is to Rule 1910.12(h). Unresolved, however, are Father's 2013 and 2014 exceptions, which were filed prior to the 2016 change in procedure, and wherein Father filed a demand for a *de novo* hearing. **See** Pa.R.C.P. 1910.11(i) ("**If a demand is filed**, there shall be a hearing *de novo* before the court.").

---

[17] Judge Carluccio's order, directing proceedings before a support hearing officer (for the years 2013 through 2019), clearly intended to consolidate and expedite this protracted matter.

Moreover, because there is no transcript of the May 2, 2022 argument before Judge Demchick-Alloy, this Court is unable to discern whether the format of that hearing prejudiced Father in any way. *See Capauno*, *supra* (court's decision precluding husband from offering testimony and evidence at *de novo* hearing following decision of conference officer in child support action constituted reversible error; trial court's purported unwritten policy of not permitting presentation of evidence at de novo hearing at odds with Rules of Civil Procedure governing support actions, and although court heard arguments from husband's counsel and from husband, these arguments were not substitute for evidence). Though confident Judge Demchick-Alloy had before her the complete domestic relations file,[18] and acknowledging that Father has had numerous opportunities to be heard, we nonetheless conclude that the circumstances of this case, where Father filed exceptions and a demand for a *de novo* hearing prior to the 2016 change in local procedure, compel a remand.[19]

---

[18] *See Groner v. Groner*, 476 A.2d 957, 959 (Pa. Super. 1984) (Rule 1910.11(i) does not contemplate reliance upon record as substitute for *de novo* hearing).

[19] We recognize that this procedure may ultimately yield the same results, and we advise Father that pursuing litigation for the sake of litigation is not in Children's best interests.

We reverse the court's order denying Father's 2013 and 2014 exceptions only, and we remand with instructions.[20] Upon remand, the court shall hold a *de novo* hearing in compliance with Rule 1910.11(i), limited to Father's exceptions filed on February 6, 2013 and November 21, 2014 (docket entries 402 and 827, respectively), and only to those specific exceptions that have not been rendered moot as a result of subsequent proceedings. The court shall issue any appropriate orders in accordance with Rule 1910.11 and 1930.5 (relating to discovery in domestic relations matters), and, **if necessary**, order either party to reimburse the other, as may be appropriate.

Reversed in part; case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2023

---

[20] We specify that our remand is limited to the 2013 and 2014 exceptions. Any objections Father has to the trial court's resolution of support for the years 2015 through 2019, without *de novo* review, was proper as those calculations were for year subsequent to the change in the local court rule. Moreover, those claims are waived for failure to develop an argument and failure to cite to any legal authority. ***See*** Appellant's Brief, at 20-21 (Father arguing that court was "simply making up numbers," and "took the lazy-way-out," and claiming court and domestic relations office performed "judicial magical calculations.").